**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHIRLEY SAVERAID,

     Plaintiff - Appellant,

v.

STATE FARM INSURANCE
COMPANY,

     Defendant - Appellee.

No. 14-2019
(D.C. No. 1:13-CV-00818-JAP-ACT)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **SEYMOUR**, and **MORITZ**, Circuit Judges.

Shirley Saveraid appeals from the district court's grant of summary judgment in favor of State Farm on her claims to recover for injuries from a car accident. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Saveraid sustained injuries as a passenger in a single-vehicle accident in New Mexico. Her friend Robin Hall was driving Saveraid's motor home. At the time of the accident, Saveraid, an Iowa resident, had two insurance policies with State Farm: a policy for her Holiday Motor Home ("Motor Home policy") and a policy for her Ford Edge ("Towed Vehicle policy"). Her policies with State Farm were executed in Iowa and, by their terms, are governed by Iowa law. Each of the policies includes liability coverage limits of up to $500,000 per person[1] and underinsured motorist ("UIM") coverage limits of $100,000 per person.[2]

Each policy also contains several identical provisions that form the basis of this lawsuit. First, both policies include an "other insurance" clause, which is intended to prevent the stacking of UIM coverage from two separate policies.[3] The language states:

---

[1] Liability coverage protects the insured in an event that she is sued for claims that come within the coverage of her policy (*i.e.*, third-party insurance claims).

[2] UIM coverage pays for the damages of the insured person who is legally entitled to collect from the at-fault driver, but that driver has inadequate insurance to cover the insured's damages.

[3] The "stacking" of policy limits takes place where the same claimant and the same loss are covered under multiple policies (inter-policy stacking), or under multiple

> If Underinsured Motor Vehicle Coverage provided by this policy and one or more other policies issued to you . . . by the State Farm Companies apply to the same bodily injury, then . . . the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid . . . .

Appellant's Br. at 67, 105. Second, both policies contain an "owned vehicle exclusion," which excludes vehicles from the definition of an underinsured motor vehicle if they are either provided liability coverage under the policy or are owned by the insured. *Id.* at 65, 103.

Following the accident, Hall's insurance provider (also State Farm) paid Saveraid $25,000 under his policy's liability coverage. State Farm also paid Saveraid $500,000 in liability benefits under her own Motor Home policy because it treated Hall as a permissive driver.[4] Even so, Saveraid sued State Farm in New Mexico state court to recover the UIM benefits under her two policies. State Farm then removed the case to the United States District Court for the District of New

---

coverages contained within a single policy (intra-policy stacking), and the amount available under one policy is inadequate to satisfy the damages alleged or awarded. In other words, the claimant adds all available coverages together to satisfy her actual loss. *See* Steven Plitt et al., 12 <u>Couch on Insurance</u> § 169:4 (3d ed. 2014) for more information on stacking.

[4] State Farm paid Saveraid the benefits under her liability coverage even though the policy had the "owned vehicle" exclusion. If enforceable, the exclusion would have precluded Saveraid from receiving liability coverage under her own policy. However, State Farm did not invoke the exclusion because it understood that Saveraid intended to bring her case in New Mexico and it did not think that the New Mexico courts would have enforced the provision because doing so would have violated a fundamental principle of justice in New Mexico.

Mexico. However, State Farm continued to evaluate her claims and paid Saveraid an additional $100,000 in UIM benefits under her Towed Vehicle policy.

In her complaint, Saveraid claimed a right to stack her UIM coverages from her two policies despite their explicit anti-stacking provisions. Additionally, she claimed that she was entitled to increase her UIM coverage limits to match her liability limits. According to Saveraid, New Mexico's laws governing the selection and rejection of UIM coverage should trump Iowa law, and New Mexico law allows such policy reformation. Accordingly, she sought a total of $1,000,000 in UIM benefits under her two policies, acknowledging that State Farm had already paid her $100,000 of that amount. State Farm moved for summary judgment, and Saveraid filed a cross-motion for summary judgment.

The district court granted State Farm's motion for summary judgment and denied Saveraid's cross-motion. First, it denied her request to apply New Mexico law to the anti-stacking provisions, explaining that the Iowa provision was fully enforceable in New Mexico under *Shope v. State Farm Ins. Co.*, 925 P.2d 515 (N.M. 1996). Second, the court declined to reform her Towed Vehicle policy's UIM coverage limits because, based on the payments Saveraid had received under her policies, it concluded that applying Iowa law did not conflict with fundamental principles of justice in New Mexico.

-4-

On appeal, Saveraid argues that the district court erred in concluding that the "other insurance" clause prohibiting inter-policy stacking did not violate New Mexico's fundamental principles of justice. She next asserts that the district court's decision regarding the reformation of her UIM coverage was based on the erroneous conclusion that "other insurance" clauses are enforceable in New Mexico. Finally, she requests that this court reverse the grant of summary judgment for State Farm and certify these matters to the New Mexico Supreme Court for determination.

## DISCUSSION

Because we sit in diversity jurisdiction, we apply substantive state law to Saveraid's claims, but we apply federal law to "the propriety of the district court's grant of summary judgment." *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) (quoting *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001)) (internal quotation marks omitted). Therefore, we review de novo the district court's grant of summary judgment. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At its core, this case presents the question of whether New Mexico or Iowa law applies to the disputed insurance policy provisions. New Mexico follows the choice-of-law doctrine of *lex loci contractus*—the law of the place of contracting—to issues involving contract interpretation, including insurance policies. *Shope*, 925 P.2d at 517. However, there is a narrow exception: a New Mexico court will apply its own law when the foreign law would violate a fundamental principle of justice under New Mexico law. *Id.* "It is said that courts should invoke this public policy exception only in 'extremely limited' circumstances." *Reagan v. McGee Drilling Corp.*, 933 P.2d 867, 869 (N.M. Ct. App. 1997) (quoting *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 218 (10th Cir. 1992)). "Mere differences among state laws should not be enough to invoke the public policy exception." *Id.* (citing *Shope*, 925 P.2d at 518). Otherwise, "the forum law would always apply unless the foreign law were identical, and the exception would swallow the rule." *Id.*

### A. Anti-Stacking Provisions

New Mexico courts generally interpret stacking provisions favorably for the insured. *See Rodriguez v. Windsor Ins. Co.*, 879 P.2d 759, 759 (N.M. 1994) (noting that the New Mexico Supreme Court's cases have "evolved a strong judicial policy . . . favoring stacking"). In contrast, Iowa law does not. *See Farm Bureau Mut. Ins. Co. of Iowa v. Ries*, 551 N.W.2d 316, 319 (Iowa 1996)

(emphasizing that anti-stacking provisions are valid and enforceable even when the various policies involved are issued by different insurers). Here, the district court applied Iowa law to the "other insurance" clause in Saveraid's policies, enforcing the anti-stacking provision based on the New Mexico Supreme Court's holding in *Shope*. In *Shope*, the New Mexico Supreme Court held that "our rationale in establishing this policy [of favoring stacking] did not concern fundamental principles of justice . . . ." 925 P.2d at 517.

Saveraid argues that the district court erroneously relied on *Shope* to conclude that the anti-stacking provisions in her insurance policies do not violate a fundamental principle of justice in New Mexico. But her argument centers on the mistaken idea that there is a distinction between inter- and intra-policy stacking under New Mexico law for the purposes of fundamental justice. As mentioned earlier, inter-policy stacking refers to one claimant being covered under multiple policies for a single loss, and intra-policy stacking refers to one claimant being covered under multiple coverages within the same policy for a single loss. Saveraid attacks this difference in an attempt to distinguish her case from *Shope*. She fails to do so.

1. Inter-Policy versus Intra-Policy Stacking

Saveraid attempts to distinguish *Shope* from her own case by arguing that New Mexico law on stacking policies distinguishes between inter-policy and intra-

policy stacking. *Shope* concerned intra-policy stacking, while Saveraid's case involves inter-policy stacking. Accordingly, she argues that *Shope*'s holding applies only to intra-policy stacking cases.

In *Shope*, the New Mexico Supreme Court confronted a choice-of-law dispute over whether to enforce an anti-stacking provision from a Virginia insurance contract. 925 P.2d at 515–16. Virginia law enforces anti-stacking provisions. *Id.* at 516. While the court noted that New Mexico public policy favors stacking in UIM cases when separate premiums have been paid, "this rule is one of contract interpretation that does not rise to the level of a fundamental principle of justice." *Id.* at 517. Saveraid argues that New Mexico treats inter- and intra-policy stacking provisions differently, and so *Shope* only applies to intra-policy stacking. She argues to us that inter-policy stacking rises to the level of a fundamental principle of justice. We are not persuaded. As we show below, the New Mexico Supreme Court does not meaningfully distinguish between inter- and intra-policy stacking and so Saveraid cannot successfully distinguish her facts from *Shope*.

A brief review of New Mexico law on stacking establishes that it does not distinguish between inter- and intra-policy stacking when evaluating whether such provisions violate a New Mexico fundamental principle of justice. Two of the foundational cases are *Sloan v. Dairyland Ins. Co.*, 519 P.2d 301 (N.M.

1974), and *Lopez v. Found. Reserve Ins. Co.,* 646 P.2d 1230 (N.M. 1982). In *Sloan*, the New Mexico Supreme Court permitted inter-policy stacking when the insured had paid separate premiums for each of the policies. 519 P.2d at 302–03. In *Lopez*, the court permitted intra-policy stacking on the same public policy grounds. 646 P.2d at 1235. It explained that "[t]he crucial question, therefore, is not whether multiple vehicles are insured under one policy or several, but whether the insured has paid one premium or several for the particular uninsured motorist coverage sought to be stacked." *Id.* The critical issue is not the number of policies but the number of premiums paid.

The district court relied on *Lopez* for the proposition that New Mexico does not make "a firm distinction between intra-policy stacking and inter-policy stacking." Appellant App. at 217. Saveraid criticizes the court for this reliance, claiming that *Lopez* does in fact distinguish between the two types of stacking. We agree with the district court. In fact, the *Lopez* court explained that "[t]he reasoning adopted in the *Sloan* case is applicable to the issue in the present case." *Lopez*, 646 P.2d at 1233. The cited cases have all treated inter- and intra-policy stacking cases the same.

Saveraid also criticizes the district court for relying on *Konnick v. Farmers Ins. Co. of Ariz.*, 703 P.2d 889 (N.M. 1985). But she misses the point yet again— the district court relied on *Konnick*, a case in which the New Mexico Supreme

Court allowed inter-policy stacking, because it cites both *Lopez* (intra) and *Sloan* (inter) for support, again demonstrating that New Mexico courts treat inter- and intra-policy cases the same.[5] Thus, we agree with the district court that New Mexico courts do not distinguish between inter- and intra-policy stacking.

   2.  Fundamental Principle of Justice

Because New Mexico law equally enforces both inter- and intra-policy stacking prohibitions in choice-of-law analysis, Saveraid's argument that this issue rises to the level of a fundamental principle of justice fails under *Shope*. *See Shope*, 925 P.2d at 517. The *Shope* court held that "[w]hile we interpret New Mexico insurance contracts to avoid repugnancy in clauses that prohibit stacking of coverages for which separate premiums have been paid, this rule is one of contract interpretation that *does not rise* to the level of a fundamental principle of justice." *Id.* (emphasis added).

And if *Shope* is not enough, the New Mexico Court of Appeals has recently reaffirmed *Shope*'s view in *Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 329 P.3d 749 (N.M. Ct. App.), *cert. denied*, 328 P.3d 1188 (N.M. 2014). The facts of

---

   [5] Saveraid admonishes the district court for relying on *Rehders v. Allstate Ins. Co.*, 135 P.3d 237 (N.M. Ct. App. 2006), for the idea that New Mexico does not distinguish between inter- and intra-policy stacking. But just as she was wrong about the roles of *Lopez* and *Konnick*, she also misses the point with *Rehders*. In *Rehders*, the court drew from both inter- and intra-policy stacking cases to assess whether stacking was appropriate in the intra-policy stacking context. *Rehders*, 135 P.3d at 244–45. The district court pointed to *Rehders* for this exact reason. It shows that New Mexico does not distinguish between the two types of stacking.

*Wilkeson* are similar to Saveraid's. Wilkeson was insured under two separate California policies, both of which contained inter-policy anti-stacking provisions for UIM coverage. *Id.* at 750. After a car accident, Wilkeson's insurer paid her the UIM coverage under one policy, but it denied coverage under the second. *Id.* After reviewing the history of stacking jurisprudence in New Mexico, including the inter- and intra-policy stacking cases, the New Mexico Court of Appeals agreed with Wilkeson that New Mexico generally favors stacking. *Id.* at 751. However, it explained that choice-of-law issues require a different sort of analysis, as laid out in *Shope*. *Id.* at 752. To overcome New Mexico's policy of applying the substantive law from where the contract was executed, a party must show "a countervailing interest that is fundamental and separate from general policies of contract interpretation." *Id.* (quoting *Shope*, 925 P.2d at 517) (internal quotation marks omitted). Because *Shope* concluded that the stacking of insurance coverages is purely a question of contract interpretation that did not violate a fundamental interest of justice in New Mexico, the *Wilkeson* court declined to apply New Mexico law. *See id.* at 753 ("Although there is an important public policy favoring stacking that . . . may outweigh conflicting concerns within the same or related insurance policies, it does not alter the New Mexico policy to interpret insurance contracts according to the law of the place

-11-

where the contract is executed."). It consequently upheld the anti-stacking provision in the California policies. *Id* at 754.

Saveraid also depends heavily on *Sloan* to support her claim that New Mexico public policy should control the enforceability of the anti-stacking provision. In doing so, she misunderstands the fundamental question at stake. In *Sloan*, an inter-policy case, the New Mexico Supreme Court refused to apply an anti-stacking provision in a *New Mexico* insurance policy because it conflicted with *New Mexico* public policy. 519 P.2d at 303. These are two distinct questions. Under *Sloan*, the court was applying the standard for whether the contract—which was created in New Mexico—contained a provision that violated New Mexico public policy. *Id.* at 301–03. Conversely, in *Shope*, the court was tasked with determining whether a contract provision from Virginia violated a New Mexico fundamental principle of justice, a choice-of-law question. 925 P.2d at 515–16. What Saveraid fails to acknowledge is that *Sloan* had no choice-of-law question, and its holding is inapplicable to the issue she raises in her case.[6] Thus,

---

[6] Saveraid argues that *State Farm Mut. Auto. Ins. Co. v. Ballard*, 54 P.3d 537 (N.M. 2002), provides an example of how the district court should have analyzed this case. In *Ballard*, a choice-of-law case, the court cited *Estep v. State Farm Mut. Auto. Ins. Co.*, 703 P.2d 882 (N.M. 1985), which was not a choice-of-law case, to establish New Mexico law and public policy for the purpose of *lex loci contractus* analysis. 54 P.3d at 540. She argues we should apply *Sloan* instead of *Shope* for the same reasons. But New Mexico precedent disfavors this argument. In *Wilkeson*, the court rejected a request to apply *Ballard* instead of *Shope* in deciding whether to enforce an inter-policy anti-stacking provision. 329 P.3d at 754 ("*Ballard* . . . [is] not [a] stacking case[], and we consider the

-12-

we pivot away from whether New Mexico courts enforce stacking as part of New Mexico's general public policy, and instead, we ask whether the anti-stacking provision rises to the level of a violation of a fundamental principle of justice in New Mexico. To this, *Shope* already has answered no. 925 P.2d at 517.

*Shope* and *Wilkeson* are dispositive of this case. Inter- and intra-policy stacking cases are interchangeable when interpreting the validity of anti-stacking provisions in New Mexico. Both types of provisions are preferred for the same reason: "to ensure that the insured gets what he or she pays for, and to fulfill the reasonable expectations of the insured.*" Rehders*, 135 P.3d at 245 (citing *Montano v. Allstate Indem. Co.*, 92 P.3d 1255 (N.M. 2004)).

For the first time on appeal, Saveraid asserts that *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214 (N.M. 2010), and *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209 (N.M. 2010), support her position that anti-stacking provisions are not enforceable in New Mexico. We see no reason to deviate from our general rule that we do not address arguments that are presented for the first time on appeal.[7] *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002). Thus, we do not address it fully here.

---

public policies involved in [that] case[] to carry greater weight when balanced against the policy to interpret insurance contracts according to the law of the contracting state."). Therefore, this argument fails.

[7] Moreover, Saveraid's new argument lacks merit. This court stated that "it is important to recognize that . . . the *Jordan* court did not comment on the question of

-13-

In sum, Saveraid's Iowa UIM policy contained an anti-stacking provision, and there is not a fundamental principle of justice under New Mexico law that precludes its application here.[8] Both parties agree that under Iowa law, anti-stacking provisions are enforceable. State Farm has already paid Saveraid the UIM benefits under her Towed Vehicle policy. Therefore, she has no basis to recover UIM benefits under her Motor Home policy.

**B. Reformation Under *Jordan***

Saveraid next argues that she is entitled to reformation of her UIM coverage limits under *Jordan*. We disagree. Under the facts of this case, denying Saveraid the ability to reform her UIM coverages does not violate a New Mexico fundamental principle of justice.

For insurance policies originating in its state, New Mexico requires that an insured's UIM coverage limits must equal her liability limits *unless* the insured waives this requirement in writing as part of the insurance policy delivered to her. *Jordan*, 245 P.3d at 1217. If an insurer fails to obtain a valid rejection, New

---

stacking, and it did not explicitly forge a nexus between the new standard that it announced and the concept of stacking." *Jaramillo v. Gov't Emp. Ins. Co.*, 573 F. App'x 733, 743 (10th Cir. 2014) (unpublished). We conclude that these cases do not change the landscape of anti-stacking policy in the context of choice-of-law analysis in New Mexico.

[8] Saveraid asks that we certify this question to the New Mexico Supreme Court. This is unnecessary because New Mexico has already answered this question, as we explained above.

Mexico courts will reform the policy to provide UIM coverage that equals the limits of the liability coverage. *Id.* But Iowa has no such requirement. *See* Iowa Code §§ 516A.1, 321A.1 (2014). Saveraid's UIM coverage is less than her liability coverage. Because her policies originated in Iowa, we will apply Iowa law unless reformation under *Jordan* is a fundamental principle of justice in New Mexico.

Saveraid argues that the policy behind *Jordan*—to protect insureds by requiring the insurer to get an explicit rejection—rises to the level of a fundamental principle of justice in New Mexico. She supports this assertion by noting that *Jordan* says nothing about "other insurance" clauses or their effect on inter-policy stacking, so *Sloan* remains good law. But, she claims, *Jordan* completely changed inter-policy stacking because, according to her interpretation of the case, no matter how unambiguous an anti-stacking provision is, *Jordan* mandates that UIM coverages on a multi-vehicle policy must be stacked unless the *Jordan* requirements are met. The district court declined to determine whether the *Jordan* requirements rise to the level of a fundamental principle of justice in New Mexico. It found that, based on the facts in this particular case, applying Iowa law would not conflict with fundamental New Mexico principles of justice and thus no reformation should occur. We agree.

-15-

If Iowa law applies, Saveraid would not be entitled to additional UIM coverage. Iowa does not require its insurers to offer policy holders UIM coverage equal to their liability coverage. *See* Iowa Code §§ 516A.1, 321A.1 (2014). Instead, Iowa merely requires that an insurer provide UIM coverage equal to the statutory minimum of $20,000 for one person, absent a written rejection. *See* Iowa Code §§ 516A.1, 321A.1 (2014). Saveraid's UIM coverage already exceeds that statutory minimum under Iowa law. Consequently, she would not be eligible for reformation of her UIM coverage and would not receive additional compensation beyond the $100,000 in UIM benefits State Farm already paid her.

If New Mexico law applies, Saveraid also would not be eligible for additional UIM benefits. As previously stated, in New Mexico, an insured is entitled to have her UIM coverage reformed (increased) to equal her liability coverage, absent a legally sufficient rejection pursuant to *Jordan*. 245 P.3d at 1217. Saveraid's UIM coverage is less than her liability coverage, so she falls into the category of insureds that *Jordan* addresses.

However, New Mexico's law governing UIM coverage has a limitation that Iowa law does not, thus prohibiting Saveraid from recovering additional UIM benefits. Under Iowa law, an insured is permitted to recover her UIM benefits until she is fully compensated for her injuries or until her policy limits are exhausted. *Am. States Ins. Co. v. Estate of Tollari*, 362 N.W.2d 519, 522 (Iowa

1985) (holding that UIM benefits are not decreased by the amount of the underinsured's liability coverage if the insured's injuries exceed the limit). In contrast, under New Mexico law, an insured is entitled to UIM benefits only to the extent that her UIM coverage exceeds the underinsured's liability coverage. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092, 1098 (N.M. 1985). In *Schmick*, the New Mexico Supreme Court held that an insured's UIM coverage may be offset by the tortfeasor's liability coverage. *Id.* at 1099. For example, imagine the insured has $30,000 in UIM coverage. She gets into a car accident with an underinsured driver, who has $25,000 in liability coverage. The insurer owes her $30,000 (her UIM coverage) minus $25,000 (the tortfeasor's liability coverage) for a total of $5,000.

In this case, even if Saveraid's UIM benefits were reformed under *Jordan* to $500,000 (the amount of her liability coverage), that amount would not exceed the liability coverage she received from Hall's insurance coverage, also $500,000. That liability coverage from Hall would offset Saveraid's own UIM coverage.[9] Thus, even if New Mexico law governed the policy and the policy was

---

[9] Technically, the $500,000 that Saveraid received from Hall's liability coverage actually came from her own insurance policy because Hall was covered under her policy as a permissive driver. To explain, insurance policies often include an omnibus clause stating that the word "insured" includes not only the named insured but also any person using the car with the named insured's permission. When this permissive driver has an accident, the omnibus clause extends liability coverage under the owner's policy to the driver. *See* George A. Locke, 18 Am. Jur. <u>Proof of Facts</u> § 1 (3d. ed. 2014). In this case,

reformed, Saveraid would not receive additional UIM benefits because they would be offset by the liability coverage she received from Hall's insurance.

Because Saveraid would remain in the same financial position whether or not *Jordan* applies, we do not have to reach the question of whether *Jordan* constitutes a fundamental principle of justice in New Mexico. Moreover, Saveraid is attempting to pick and choose the laws from each state that benefit her the most. She would like us to reform her UIM coverage limits under *Jordan* while asking us to ignore New Mexico's settled law of deducting liability benefits from her UIM coverage. Such an approach contravenes the intentions behind each state's laws, and we refuse to engage in such arbitrary lawmaking.

In sum, we agree with the district court that Saveraid is not entitled to a reformation of her UIM benefits. Under both Iowa and New Mexico law, she could not recover more money than she already has recovered. Therefore, we decline to decide whether the rule from *Jordan* constitutes a fundamental principle of justice in New Mexico and reject Saveraid's contention that she is entitled to reformation of her UIM benefit limits.

## C. Certification to the New Mexico Supreme Court

Saveraid argues that all of the issues in this case are questions of first impression for New Mexico. Thus, she asks us to reverse the district court's order

the liability coverage from Saveraid's policy counts as Hall's liability coverage (with Hall as the tortfeasor) and would offset her UIM benefits.

granting summary judgment to State Farm and certify this case in its entirety to the New Mexico Supreme Court. We decline.

Tenth Circuit Rule 27.1(A) governs the certification of state-law questions. It provides that "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) abate the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.1(A). New Mexico permits its Supreme Court to "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." N.M. Stat. Ann. § 39-7-4 (2014).

This case does not raise any novel issues of state law that the New Mexico Supreme Court has not already addressed. "[W]e will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

Both of the issues on appeal have reasonably clear courses that we can follow. The first issue, dealing with the anti-stacking provisions, has already been resolved by *Shope* and confirmed by *Wilkeson*. The second issue, involving the reformation of UIM benefits under *Jordan*, similarly does not involve any novel

issues of state law. We can avoid the question of whether the rule set forth in *Jordan* amounts to a fundamental principle of justice by looking at the specific facts of this case. Based on these facts, we can apply settled New Mexico state law to decide the case on the merits.

Therefore, we deny Saveraid's request to certify any of these issues to the New Mexico Supreme Court.

## CONCLUSION

In sum, we reject Saveraid's arguments. First, the anti-stacking provisions from insurance policies issued in Iowa do not violate a fundamental principle of justice in New Mexico, and they are thus enforceable. Second, Saveraid's UIM benefits are ineligible for reformation under *Jordan* because she would not receive any additional compensation for her injuries. Therefore, both issues can be decided under settled New Mexico state law; we decline to certify them to the New Mexico Supreme Court. We AFFIRM the district court's grant of summary judgment.

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge


-20-